THIRD DIVISION
DECEMBER 9, 2009

No. 1-07-2235

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 18154 |
| | ) | |
| ASUQUO ESANG, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE COLEMAN delivered the opinion of the court:

Following a jury trial in which he acted as his own counsel, Asuquo Esang was convicted of aggravated battery of a police officer and resisting arrest and sentenced to two concurrent two-year terms of imprisonment. He seeks reversal of his convictions, asserting that (1) the trial court erred in finding him competent to waive his right to counsel at a hearing to determine his fitness to stand trial; (2) the court failed to conduct a sufficient hearing to determine his fitness to stand trial; (3) the court improperly removed him from the courtroom, depriving him of the right to present evidence in his defense or make a closing argument; (4) the court erred in failing to appoint standby counsel; and (5) his conviction for resisting arrest, because it arose from the same physical act as his conviction for aggravated battery of a police officer, must be vacated as violative of the one-act, one-crime principle. We find that the trial court, having once found Esang unfit to stand trial, did not conduct a hearing sufficient to support its finding that he had

been restored to fitness. We accordingly reverse his convictions and remand for further proceedings.

BACKGROUND

On July 21, 2005, Cook County sheriff's deputies were called to respond to a report of a disturbance outside of administrative offices in the Daley Center in Chicago. Deputy Sheriff Phillip Mackey testified that defendant Asuquo Esang was upset and yelling about not being able to see someone about a case. Mackey and other officers asked Esang to leave the building, he refused, the officers attempted to remove him, and a struggle ensued in which officers reported that they had been kicked and bitten. Esang was charged with aggravated battery and resisting or obstructing a peace officer.

In August 2005, the office of the Cook County public defender was appointed to represent Esang, and in October 2005, the appointed public defender asked that Esang's fitness for trial be evaluated. A clinical psychologist, Dr. Debra Ferguson, provided the court with the written opinion that although Esang may have been "suffering from a Delusional Disorder," he was aware of the charges against him, familiar with legal proceedings and the roles of court personnel, and able to assist in his own defense. The psychologist's report concluded that Esang was fit to stand trial and sane at the time of his alleged crimes. On November 7, 2005, the trial court found Esang fit to stand trial. In December 2005, Esang informed the trial court that he was "having a hard time" with his appointed counsel, and that he wished to have a different attorney appointed to represent him. In January 2006, after Esang repeatedly informed the court that he did not wish to be represented by the public defender, the trial court admonished him of

his rights and obligations regarding appointed counsel and self-representation, and then ruled that Esang could represent himself.

In February 2006, Esang filed a "Motion For Judgment of the Pleadings to Dismiss Indictment for Cause of Harassment and Intimidation, Abuse of Process, Pre-Indictment Delay and Case Mismanagement." At a March 2, 2006 hearing on the motion, the prosecution, asked for its response to Esang's motions, commented, "Our position is the motions failed to support, he actually fails to support in his motions, any assertions he makes in the motions with any substantive evidence. They are rambling assertions, they touch on topics that are collateral to the substantive charge in this case. What the defendant appears to be complaining of is simply that he's unhappy about being in custody and unhappy about facing criminal charges. But nothing he touches on in his motions actually touches on the charges on the case at bar."

At the same hearing, the court stated to Esang, "What you filed here is incomprehensible and incapable of being responded to. . . . It's a lot of gibberish is what it is. You're representing yourself and you don't know what you're doing. And you have a serious case here." The court also remarked, "You were indicted in a timely manner within the statute of limitations. Case was assigned to Judge Moran. Because you weren't happy there, it was reassigned to me. It was proceeding. In a timely fashion, until you fired your lawyer. After you went to the 10th floor to see if you were fit to stand trial. Probably should go back there again because your delusions indicate to me that you may not be fit for trial."

At hearings on April 21, May 30, and June 1, 2006, Esang contended that he had not received from the prosecution various items of discovery. At the May 30 hearing, the court advised Esang, "You need a lawyer, sir." Esang answered, "Your Honor, I am not willing to do

that, Judge." On June 1, 2006, Esang made additional assertions regarding documents he had not been given, and the court interjected: "The more I hear you saying things, Mr. Esang, the more you articulate yourself - - the more I'm of the opinion you're going to go to the 10th Floor to be examined. I don't think you're competent to stand trial." Over Esang's objection, the court ordered a second clinical examination.

On July 14, 2006, Dr. Ferguson, the clinical psychologist who found Esang fit to stand trial in November 2005, reported to the court that Esang would not cooperate with a second examination, making a comprehensive fitness examination impossible. Ferguson stated that Esang manifested "paranoid, persecutory and grandiose delusions which significant[ly] impair his perceptions of reality." Her report continued: "His current thinking is predominated by these irrational beliefs and render him unable to have a rational understanding of the nature of the proceedings against him and or to realistically assess his legal situation." Ferguson concluded that Esang was unfit to stand trial. On August 23, 2006, a jury found Esang unfit for trial, and also found that there was a substantial probability that, if provided with treatment, he would attain fitness within one year. Esang was placed in the custody of the Department of Mental Health and Developmental Disabilities on November 21, 2006. He continually objected to further fitness proceedings, insisting that he was fit to stand trial and that the proceedings merely delayed the presentation of his defense on the criminal charges.

On March 14, 2007, forensic psychiatrist Jonathan Kelly advised the trial court by letter that he had examined Esang and that Esang was fit to stand trial. The court also received a 90-day evaluation dated March 7, 2007 and signed jointly by clinical psychologist Michael Watrous and psychiatrist Farzana Husain. The 90-day evaluation noted that throughout the course of his

hospitalization, Esang had "engaged in obstinate and contrary behavior," "vehemently refused all psychotropic medication," "refused to acknowledge any mental or personality condition," and "occasioned several instances of contemptuous and noncompliant behavior which has resulted in the mobilizing of security staff." The evaluation reported that Esang agreed to take medication for his physical problems and always attended fitness restoration group sessions.

On March 15, 2007, the court advised Esang of the fitness evaluations. "So, Mr. Esang, you are here today on the basis of two reports by doctors saying that you are fit for trial. In order to put the case back on the trial calendar we must restore you to fitness, which can be done simply by stipulating to those reports." The court asked if Esang would stipulate to the reports, and he asked for copies. The court then asked again, "So, are you in concurrence with the opinion of the psychiatrist?"

Esang replied, "Well, normally like I said before I always feel fit. There was never a time I disagreed I am not fit to stand trial."

The court continued, "So, you are saying you agree with their conclusions that you are fit for trial?"

Esang answered, "Your Honor it is not that I am not agreeing, that I have agreed with their conclusion. My conclusion has totally been affirmed that I agreed. This is me that was here last. I didn't take no psychiatric treatment. I didn't know, take no, any kind of medication from them, take nothing from them. This is me. I have always been fit. This report, those testimony from Miss Debra Ferguson was nothing but formalities."

The court stated, "I understand you are saying you are fit for trial," and Esang responded, "I am fit for trial. I have been fit for trial right from day one. Statement of Miss Ferguson doesn't

count." The court concluded, "We will indicate the defendant is restored to fitness." After extended discussion about Esang's wishes, the court appointed the office of the public defender to represent him at trial.

On May 11, 2007, Esang's appointed counsel advised the court that his client desired to file motions that he could not agree to present, and asked that the office of the public defender be permitted to withdraw from the matter. Esang advised the court of his belief that counsel was not representing him effectively, and stated that he had a constitutional right to object to his attorney's performance. The court answered, "You would if this case were just starting here, but I don't believe you're competent to represent yourself." The court denied counsel's motion to withdraw.

Counsel advised the court that Esang would not cooperate with his attempts to prepare an answer to the prosecution's charges, and the court commented, "Maybe the answer is that he should go back to the 10th floor and have him examined. If he's not able to cooperate with counsel - - he obviously is not able to represent himself." The court then ordered a third behavioral clinical examination. On May 22, 2007, forensic psychiatrist Jonathan Kelly advised the court by letter that he had examined Esang on May 16. In Kelly's opinion, Esang was "able to assist in his defense, if he chooses to do so." Kelly also stated that Esang's "lack of cooperation and oppositional behavior are volitional and likely related to his Personality Disorder, rather than due to a mental illness." Kelly concluded that Esang was fit to stand trial.

On May 25, 2007, Esang again discussed with the court his desire to represent himself:

"ESANG: I'm going to represent myself.

6

THE COURT: You understand you have a right to have a lawyer?

ESANG: Judge, if he want to withdraw, let him withdraw, but I want –

THE COURT: He didn't say he wanted to withdraw. I'm asking you what you want to do.

ESANG: Judge, I want to represent myself. If he want to stand in the fashion of limited representing, fine. If you want to withdraw, fine.

THE COURT: I haven't heard him say he wants to withdraw. They say that you're fit for trial as long as you cooperate, if you want to.

* * *

ESANG: Your Honor, I want Mr. Maldonado to withdraw and I want the motion because it's an appealable motion.

* * *

THE COURT: And you know that you have a right to have appointed counsel?

ESANG: I know, Your Honor.

THE COURT: And you don't want appointed counsel?

ESANG: At this time, no.

THE COURT: You want to represent yourself as you did once before?

ESANG: I want to represent myself, and I am asking that my motion should be responded in writing just as I did in writing.

THE COURT: We'll get to that. First of all, I want to make sure that Mr. Maldonado is not going to represent you.

ESANG: Yes, Your Honor.

THE COURT: I'll give you leave to withdraw, Mr. Maldonado.

PUBLIC DEFENDER: Thank you, Your Honor.

Esang's jury trial commenced on June 4, 2007. Esang made an opening statement, and cross-examined the three officers who testified for the prosecution regarding his arrest. After the close of the prosecution's case, Esang expressed a desire to present "exhibits," which apparently consisted of police reports, hospital records and grand jury transcripts intended to impeach the arresting officers' testimony about the injuries they suffered in their encounter. Outside the presence of the jury, the court ruled that the exhibits were inadmissible hearsay. Esang continued the discussion after the jury was recalled, stating, "You are not being fair, Your Honor," and asserting that the exhibits were not hearsay.

Asked if he had evidence other than the excluded exhibits, Esang again referred to the exhibits, and suggested that the exhibits should be permitted in lieu of witnesses. The court responded, "I wasn't supposed to call anybody. You decided who you wanted to call. You fired your lawyer, you should have made arrangements to call." Esang said, "Your Honor, that's

irrelevant. If I can't submit evidence, if you don't allow me to submit evidence, what else is there?"

The court then ordered Esang removed from the courtroom and he was not present for the remainder of the trial, including the prosecution's closing argument, the instruction of the jury, and the jury's return of guilty verdicts on one count of aggravated battery and one count of resisting or obstructing a peace officer. The trial court sentenced him to a two-year term of imprisonment for each count, to be served concurrently. This appeal followed.

ANALYSIS

Esang contends that the March 2007 hearing that determined him to be fit to stand trial was insufficient. We agree. "A trial court's determination of fitness may not be based solely upon a stipulation to the existence of psychiatric conclusions or findings." People v. Contorno, 322 Ill. App. 3d 177, 179 (2001). "The ultimate decision as to a defendant's fitness must be made by the trial court, not the experts. People v. Bilyew, 73 Ill. 2d 294, 302 (1978). A trial court must analyze and evaluate the basis for an expert's opinion instead of merely relying upon the expert's ultimate opinion. In re T.D.W., 109 Ill. App. 3d 852, 855 (1982)." Contorno, 322 Ill. App. 3d at 179. See also People v. Goodman, 347 Ill. App. 3d 278, 287 (2004). When a defendant has previously been found unfit, a finding of restored fitness must be based not only upon a stipulation to the conclusion of psychiatric reports, but upon an affirmative exercise of the court's discretion to determine the defendant's mental state. People v. Thompson, 158 Ill. App. 3d 860, 865 (1987). In the instant case, the trial court's finding that Esang had been restored to fitness appeared to be based solely upon his stipulation to psychiatric conclusions that he was fit to stand trial. "To accept defendant's opinion that he is able to co-operate with counsel

in his defense, when the purpose of the hearing is to determine that very fact, would make a sham out of the sanity hearing." People v. McKinstray, 30 Ill. 2d 611, 616-17 (1964). Esang's stipulation was especially unreliable in light of the medical evaluation's report, confirmed by Esang himself, that he had refused all psychotropic treatment, thereby suggesting that his medical condition was minimally changed from the time of the earlier finding that he was unfit.

A trial court's failure to independently analyze and weigh expert testimony in making a fitness finding is a constitutional error, properly considered under the plain error doctrine and reversible unless it can be proved to be harmless beyond a reasonable doubt. People v. Contorno, 322 Ill. App. 3d at 179-80. Given the trial court's clear doubt about Esang's fitness to stand trial both before and after the March 2007 restoration determination, we cannot conclude that the insufficient fitness restoration hearing in the instant case was harmless beyond a reasonable doubt. Accordingly, we reject the State's contention that Esang has waived review of the issue by failing to raise it at trial and in a posttrial motion.

The State suggests that even if Esang's restoration hearing was inadequate, the proper remedy is a retrospective fitness hearing rather than a new trial. We are unpersuaded by this contention. Although in "exceptional cases," retrospective fitness hearings may accurately discern the mental state of a defendant during a trial held many years earlier, retrospective hearings "will normally be inadequate to protect a defendant's due process rights when more than a year has passed since the original trial and sentencing." People v. Neal, 179 Ill. 2d 541, 553-54 (1997). Our supreme court found such "exceptional" circumstances to be present in Neal, where the defendant asserted not that he suffered from a long-standing condition that rendered him unfit, but that he was rendered unfit by the use of specific psychotropic drugs used at the time of

his trial. 179 Ill. 2d at 545-46. The Neal court found that long after any individual use of the drugs in question, medical experts could establish that, when taken in known doses, they would not have caused impairment sufficient to render the defendant unfit to stand trial. "If the chemical properties of medication are such that their effects could accurately be assessed in light of a defendant's known medical history, * * * it would not matter whether the evaluation followed the original trial and sentencing by 15 days or 15 years. The result would be the same." Neal, 179 Ill. 2d at 554.

Doubt regarding Esang's fitness for trial in the instant case was noted by the court a full year prior to the fitness restoration hearing, and was not asserted to have been produced by any specific prescription of medication. Since Esang's condition was not alleged to have been produced by a single, easily identified and readily assessed factor, and since his documented lack of cooperation with medical personnel limited the extent of his evaluations, we do not believe that the instant case presents the exceptional circumstance that would enable an accurate judgment of his mental state more than two years after his trial. We therefore conclude that the general principle stated by the Neal court must prevail here, and that the inadequacy of Esang's restoration hearing requires reversal of his convictions and sentences.

Esang also contends that despite his assertion of his right to represent himself, the court committed reversible error in failing to appoint counsel to represent him or, at minimum, to act as standby counsel. Where a *bona fide* doubt exists as to a defendant's competency to stand trial, that defendant cannot intelligently waive his constitutional right to representation by counsel, and permitting him to represent himself is reversible error. People v. Rath, 121 Ill. App. 3d 548, 550-51 (1984).

11

In the instant case, Esang's in-court conduct, though exhibiting familiarity with the charges against him and the nature of the court proceedings, was sufficiently troubling to the court to prompt it to order, *sua sponte,* two additional medical examinations after the original examination requested by his counsel. We believe that the trial court's repeated and explicit expressions of concern regarding Esang's mental state demonstrated the existence of a *bona fide* doubt regarding his competency, and that in the presence of such doubt, Esang's waiver of his right to counsel cannot be held to have been intelligently made.

We also note that since Esang's trial, the United States Supreme Court has shed additional light on a court's ability to strike a balance between a defendant's right to determine the course of his own defense and the desire, readily apparent in the trial court's conduct here, to protect that defendant from the consequences of an unsound decision to represent himself. It has now explicitly been held that a defendant may be competent to stand trial while at the same time incompetent to represent himself, and that in such circumstances, he suffers no constitutional injury from a trial court's refusal to permit him to represent himself. Indiana v. Edwards, 554 U.S. _____, 171 L. Ed. 2d 345, 128 S. Ct. 2379 (2008).

CONCLUSION

For the foregoing reasons, we reverse Esang's convictions and sentences and remand to the circuit court of Cook County for proceedings consistent with this opinion.

Reversed and remanded.

QUINN and STEELE, JJ., concur.