2025 IL App (2d) 240298-U
No. 2-24-0298
Order filed September 29, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-388 |
| TAVIRIS D. PAUL, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's forfeited claim that the trial court failed to exercise its independent judgment in making a finding of fitness did not implicate a structural right and, therefore, was reviewable only under the first prong of the plain error rule. The court's error was harmless beyond a reasonable doubt given the evidence of defendant's fitness.

¶ 2    After a jury trial, defendant, Taviris D. Paul, was convicted of armed robbery (720 ILCS 5/18-2(a)(4) (West 2022)) and aggravated battery (*id.* § 12-3.05(e)(1)) and sentenced to concurrent prison terms of, respectively, 31 years and 10 years. On appeal, he contends that the cause must

be remanded for a retrospective hearing on his fitness for trial because the trial court did not independently determine whether he was fit, thus denying him due process. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On June 21, 2023, after a hearing, the trial court entered an order stating, "Defense counsel raises a *bona fide* doubt as to the defendant's fitness." The court's order directed the Kane County Diagnostic Center (KCDC) "to complete a fitness evaluation of the defendant to assist the [c]ourt in making a determination." The record contains no transcript or other acceptable report of the hearing. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 5     The KCDC filed a report from Dr. Ashley VanOpstall, a staff psychologist. The report was dated August 9, 2023, and entitled "Fitness to Stand Trial Evaluation." It was based on VanOpstall's examination of defendant at the KCDC on August 4, 2023.

¶ 6     VanOpstall reported that defendant was "oriented to person, place, time, and situation" but that his affect was "blunted" and he presented with a "defeatist attitude" about his current circumstances. The report continued:

> "When queried about hallucinations, [defendant] indicated that he was 'tweaking sometimes,' and he stated that he heard a female voice narrating the movie he was watching the night prior to this interview. He noted no one else heard the voice and it went away after he went to sleep. [Defendant] reported that he does not hear voices that often and stated the last time he heard a voice prior to the most recent incident was over one year ago. He did not appear to be responding to any internal stimuli at any point during this evaluation. His thought processes were logical and goal-directed, and his thought content was devoid of delusional ideas. He was able to attend to and concentrate on the evaluation without difficulty, and he did not demonstrate any memory impairments."

¶ 7    Defendant reported that he had difficulty sleeping since being jailed and had occasional periods of depression related to the death of his son two years earlier. He had not met with the mental-health staff at the jail because he "[did] not like them." He also said he would not take medication (though, we note, the report does not indicate that defendant was prescribed any medication).

¶ 8    VanOpstall stated that, although defendant needed "education" on the roles of the prosecutor and the jury, he was ultimately able to accurately describe those roles as well as the roles of the judge and the defense attorney." Defendant identified his public defenders by name but said he did not trust them or agree with them on defense strategy. He added that he was not working with them because he believed they were not attempting to work with him. Eventually, defendant conceded that, should he choose not to work with his counsel, his case was " 'not going to work out.' " Defendant was pessimistic about his case and the justice system. He did not know what it meant to be found unfit to stand trial, and, as it was being explained to him, he became upset and asserted that he did not " 'have f*** mental problems.' "

¶ 9    In its conclusion, VanOpstall's report stated in part:

"Currently, [defendant] presented with a depressed mood and defeatist attitude. His low mood is likely the result of his unresolved grief regarding his son's death and the details of his current legal circumstances. While he denied feelings of hopelessness or suicidal ideations, [defendant] expressed a dejected attitude that appears to be interfering with his willingness to engage with his attorneys. Notably though, his depressive symptoms are not accompanied by psychotic features that would constitute a break with reality or interfere with his understanding of the pending case against him. Indeed, he presented with logical and coherent thought processes and was not observed to be responding to internal stimuli

at any point during the evaluation. While he endorsed auditory hallucinations the night prior to this interview, he recognized the voice was not based in reality and asserted he was just 'tweaking.' No other perceptual disturbances that would impair his competency abilities were reported.

In regard to his competency abilities, [defendant] demonstrated an understanding of the charges against him and the possible penalties he might face, as well as displayed a factual and rational understanding of the proceedings against him. *** [H]is recent refusal to collaborate with his attorneys appears to be volitional in nature related to his defeatist attitude rather than an inability to do so. Therefore, *** to a reasonable degree of psychological certainty, I believe that [defendant] *does meet the legal criteria for fitness to stand trial* at this time." (Emphasis in original.)

¶ 10 On August 16, 2023, the trial court held a brief hearing, which included the following colloquy:

"THE COURT: This is another case that is marked for trial setting. Are you ready to set a trial date?

MS. TILMON [(DEFENSE ATTORNEY)]: Yes, Judge. Before we do that though, I did want to make sure that the Court got a copy of the KCDC fitness evaluation.

THE COURT: That I cannot say I remember seeing.

MS. TILMON: I can forward it to the Court. Ultimately, [defendant] was deemed fit by the opinion of KCDC, and I would be stipulating to that report.

THE COURT: All right.

State?

MS. COX: The State would stipulate as well, [Y]our Honor.

THE COURT: I will accept that stipulation. We need to put that in the order, but do send me a copy of it, please."

The court then set a date for the trial.

¶ 11    Later that same day, the trial court entered a written order stating:

"Parties stipulate that if called to testify, [VanOpstall] would be qualified as an expert in the area of clinical and forensic psychology and would testify consistently with the Fitness to Stand Trial Evaluation report dated August 8 [*sic*], 2023[,] and consisting of 5 pages. [VanOpstall] would testify consistently with the findings and observations contained within the report as well as opine to a reasonable degree of psychological certainty to the conclusions drawn. Considering the evidence presented, the report and stipulation, the court finds the defendant is fit to stand trial."

¶ 12    After the jury found defendant guilty of armed robbery and aggravated battery, he filed a posttrial motion, which raised no claim of error in the fitness proceedings. The trial court denied the motion and sentenced defendant to concurrent prison terms of 31 years for armed robbery and 10 years for aggravated battery.

¶ 13    This timely appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant contends that the trial court denied him due process by failing to determine independently whether he was fit to stand trial. Defendant argues that the court improperly relied on the parties' stipulation to VanOpstall's report and to her conclusion that defendant was fit.

¶ 16    At the outset, we address the State's various claims of procedural default. We discuss first the State's argument that the record is insufficient to support defendant's claim of error. The

appellant has the burden to provide a sufficiently complete record to support a claim of error, and any doubt arising from the incompleteness of the record will be construed in favor of the judgment. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 17    The State notes that defendant failed to include a transcript or other suitable report (see Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017)) of the June 21, 2023, hearing at which the trial court ordered a fitness evaluation. The State reasons that, without a report of the June 21 proceeding, the record shows only that the trial court ordered the evaluation, not that it actually found a *bona fide* doubt of defendant's fitness; the written order of June 21 states only that the court ordered the report to "assist the [c]ourt in making a determination." The State concludes that defendant cannot establish that the court ever found a *bona fide* doubt of defendant's fitness.

¶ 18    We agree with defendant that the absence of a report of the June 21, 2023, hearing does not hinder our review; the record establishes to our satisfaction that the trial court did find a *bona fide* doubt of fitness at the June 21 hearing. The court's written order stated plainly, "Defense counsel raises a *bona fide* doubt as to the defendant's fitness." Moreover, VanOpstall's report was entitled "Fitness to Stand Trial Evaluation" and, upon the filing of the report, the parties and the trial court resolved the fitness issue at the August 16, 2023, hearing. We conclude that the record is adequate for our review of defendant's claim of error.

¶ 19    Next, the State claims that defendant has forfeited his claim by failing to raise it below. See *People v. Enoch*, 122 Ill. 2d 176, 186-88 (1988). However, defendant invokes the plain error rule, which is "a well-established exception to forfeiture principles, allowing reviewing courts discretion to excuse a defendant's procedural default" (*People v. Moon*, 2022 IL 125959, ¶ 19). See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

> "[T]he plain error rule allows reviewing courts discretion to review forfeited errors under two alternative prongs: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."
>
> *Moon*, 2022 IL 125959, ¶ 20.

"Under both prongs, the burden of persuasion remains with the defendant." *Id.*

¶ 20    Citing *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 47, *People v. Esang*, 396 Ill. App. 3d 833, 840 (2009), and *People v. Cleer*, 328 Ill. App. 3d 428, 431 (2002), defendant contends that the issue is reviewable as second-prong plain error because "[a]n inadequate fitness hearing and the resulting possibility that an unfit defendant was forced to stand trial is an error so serious that the defendant's conviction must be vacated regardless of the closeness of the evidence." The State responds that defendant is barred from raising his claim even as plain error, because he "invited" the alleged error.

¶ 21    We do not agree with either party. We conclude that defendant's claim is cognizable as *first-prong* plain error.

¶ 22    We address the State's argument first. The State argues that defendant may not raise any claim of plain error, because he "invited" the alleged error here. See *People v. Quezada*, 2024 IL 128805, ¶ 59 (invited errors are not subject to plain error analysis). The State's reasoning consists solely of the assertion, "Defendant failed to raise this issue in the trial court, which would have afforded the trial court the opportunity to address the issue and eliminate any necessity to raise it as an issue on review."

¶ 23    The State confuses invited error with forfeiture. The mere failure to object is not invited error. See *People v. Holloway*, 2019 IL App (2d) 170551, ¶ 44; *People v. Harding*, 2012 IL App (2d) 101011, ¶¶ 16-17. The State's definition of forfeiture would eliminate plain error review altogether and, here, would require us to depart from well-established precedent for applying the plain error doctrine to forfeited claims of the denial of due process in a fitness proceeding. See, *e.g.*, *Finlaw*, 2023 IL App (4th) 220797, ¶ 47. Accordingly, we find that the defendant did not invite the alleged error here, and we continue with our plain error analysis.

¶ 24    Our supreme court has recently clarified that second-prong plain error, also called " 'structural error,' " is that which " 'necessarily renders a criminal trial fundamentally unfair or is an unreliable means of determining guilt or innocence.' " *People v. Ratliff*, 2024 IL 129356, ¶ 37 (quoting *Moon*, 2022 IL 125959, ¶ 28). Further, "structural errors are a very narrow group that defies harmless error analysis. [Citation.] That is, if a constitutional claim can be harmless beyond a reasonable doubt, it does not affect the fundamental fairness of a defendant's trial." *Id.* If a forfeited claim of error is amenable to harmless error analysis, it may be reviewed only as first-prong plain error. *Id.* ¶ 43.

¶ 25    Our examination of the pertinent case law reveals that courts consistently treat the denial of due process at a fitness hearing as plain error. However, the only opinion we have found to unequivocally invoke *second-prong* plain error on that issue is *Finlaw*, 2023 IL App (4th) 220797, ¶ 47. The only authority *Finlaw* cites is *People v. Shaw*, 2015 IL App (4th) 140106. *Shaw* states only that the issue "may be reviewed for plain error" (*id.* ¶ 23) and cites only *People v. Gipson*, 2015 IL App (1st) 122451. *Gipson*, in turn, does not invoke specifically second-prong plain error, but only "the plain error doctrine." *Id.* ¶ 28. In support, *Gipson* cites *People v. Cook*, 2014 IL App (2d) 130545, ¶ 13, *Esang*, 396 Ill. App. 3d at 840, and *People v. Contorno*, 322 Ill. App. 3d 177,

180 (2001). These three opinions do not clearly support defendant's invocation of second-prong plain error here.

¶ 26   We begin, chronologically, with *Contorno*. Although *Contorno* appears to invoke second-prong plain error, it applies a harmless error analysis, which, per *Ratliff*, implies first-prong, *not* second-prong, plain error. *Contorno*, 322 Ill. App. 3d at 180. *Esang*, which defendant himself cites as invoking second-prong plain error, cites *Contorno* and also applies a harmless error analysis. *Esang*, 396 Ill. App. 3d at 840. Last, our opinion in *Cook* is ambiguous. Although *Cook* appears to invoke second-prong plain error and does *not* apply a harmless error analysis, its sole authority is *Contorno*, which, as noted, is *not* clearly a second-prong plain error case. *Cook*, 2014 IL App (2d) 130545, ¶ 13.

¶ 27   Finally, although defendant cites *Cleer* to support his claim of second-prong plain error, *Cleer* does not identify either prong of the plain error rule but says merely that "the defendant's claim involves an issue of sufficient import to warrant overriding the waiver rule." *Cleer*, 328 Ill. App. 3d at 431.

¶ 28   We conclude that the case law defendant cites does not clearly support applying second-prong plain error review to a claim of the denial of due process in a fitness proceeding. As discussed above, *Ratliff* identified a structural error as one that " ' necessarily renders a criminal trial fundamentally unfair or is an unreliable means of determining guilt or innocence.' " 2024 IL 129356, ¶ 36 (quoting *Moon*, 2022 IL 125959, ¶ 28). Here, the failure of the trial court to take an active role in making a fitness determination does not render the criminal trial fundamentally unfair, nor does it render the trial an unreliable means of determining guilt or innocence. In looking for further guidance regarding what qualifies as a structural error, we again turn to *Ratliff*. " 'The structural errors identified by the Supreme Court include a complete denial of counsel, denial of

self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction.' " *Ratliff*, 2024 129356 ¶ 38 (quoting *Moon*, 2022 IL 125959 ¶ 29). Here, the circumstances surrounding the error fail to equate to those identified by the Supreme Court and therefore reinforce our determination of *first-prong* plain error.

¶ 29 Additionally, the particular due process issue defendant raises here is amenable to harmless error analysis, which further supports application of first-prong plain error. "If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579. Here, the record is clear that defendant had the assistance of counsel throughout the proceedings and, further, there is no indication that the trial court judge was impartial. Accordingly, there is a strong presumption that the due process issue raised here is subject to harmless-error analysis. Because we can determine whether the trial court would still have found defendant fit to stand trial if the court had properly exercised its discretion rather than relied simply on the parties' stipulation, the issue here is subject to harmless-error analysis. Therefore, under *Ratliff*, we must apply first-prong plain error. See *Ratliff*, 2024 IL 129356, ¶ 43.

¶ 30 We turn at last to the merits. To determine whether there was plain error, we first decide whether there was error at all. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). In *Contorno*, we set out the governing law:

"Normally, a trial court's decision that a defendant is fit to stand trial will not be reversed absent an abuse of discretion. [Citation.] However, because this issue is one of constitutional dimension, the record must show an affirmative exercise of judicial discretion regarding the determination of fitness. [Citations.] *** A trial court's

determination of fitness may not be based solely upon a stipulation to the existence of psychiatric conclusions or findings. [Citations.] However, where the parties stipulate to what an expert would testify, rather than to the expert's conclusion, a trial court may consider this stipulated testimony in exercising its discretion. [Citation.] The ultimate decision as to a defendant's fitness must be made by the trial court, not the experts. [Citation.] A trial court must analyze and evaluate the basis for an expert's opinion instead of merely relying on the expert's ultimate opinion." *Contorno*, 322 Ill. App. 3d at 179.

"Where a trial court fails to conduct an independent inquiry into a defendant's fitness but, instead, relies exclusively on the parties' stipulation to a psychological report finding the defendant fit, the defendant's due process rights are violated." *Cook*, 2014 IL App (2d) 130545, ¶ 15.

¶ 31    We agree with defendant that *Cook* is factually similar. There, the defendant was charged on May 13, 2010. *Id.* ¶ 3. In August 2010, the trial court found a *bona fide* doubt of the defendant's fitness and ordered an evaluation. *Id.* In October 2010, an evaluation report dated September 22, 2010, was filed. *Id.* ¶ 4. In it, the evaluating expert, Dr. Brown, found that the defendant was fit to stand trial despite previous reports of his low intelligence and depressive disorders. *Id.* The trial court did not address the fitness issue until December 2011, with a new judge now hearing the case. *Id.* ¶ 5. The parties stipulated to Brown's findings and that, if called, he would testify consistently with the report. *Id.* ¶¶ 5-6. The trial court signed an order finding that the defendant was fit to stand trial, based on the expert's opinions " 'as outlined in the fitness evaluation dated September 22, 2010.' " *Id.* ¶ 6. On January 27, 2012, the parties tendered a stipulation identical to the first one, and the trial court made another finding of fitness " '[b]ased on the stipulation the parties have all executed.' " *Id.* ¶ 7. The defendant then pleaded guilty, was sentenced, and appealed. *Id.* ¶¶ 8-9.

¶ 32    On appeal, we agreed with the defendant that the trial court had not fulfilled the obligations outlined in *Contorno* and that, therefore, defendant had been denied due process. *Id.* ¶¶ 19-20. We explained that the record did not "show that the trial court exercised its discretion." *Id.* ¶ 19. We continued:

"Nothing indicates that the trial court ever reviewed Brown's report. Instead, the record indicates that it did not; on both dates when the court found [the] defendant fit, the parties submitted the report with the stipulation, and the court immediately signed the prepared order finding [the] defendant fit. The court stated no details about the basis for the finding, and it did not question [the] defendant or the attorneys about [the] defendant's fitness." *Id.*

¶ 33    We ended our analysis with this guidance:

"[W]e take this opportunity to clarify what a court should do when presented with a stipulation as to fitness. While the court may accept a stipulation that, if called to testify, an expert would testify consistently with his or her report, it is incumbent upon the court to make a record reflecting that it did more than merely base its fitness finding on the stipulation to the expert's ultimate conclusion. The court must state on the record the factual basis for its finding, which must be more than a mere acceptance of a stipulation that the defendant is fit or that an expert found the defendant fit. Here, had the court stated that it read the report and agreed with Brown's conclusion based on the facts set out in the report, or had it recited the facts it relied on in making its own fitness determination, there would have been no ambiguity about the court's exercise of discretion." *Id.* ¶ 20.

¶ 34    *Cook* guides us here. The record affirmatively demonstrates that, when the trial court accepted the parties' stipulation at the August 16, 2023, hearing, the court had not even *received*

the evaluator's report, much less read it. The court accepted a stipulation and precipitately made a finding of fitness without even being in a position to exercise its discretion.

¶ 35    We recognize that the written order entered later that same day could be plausibly read to imply that, by the time the court entered the order, it had received and read the "five-page report" (which, however, it misdated). But aside from the short time between the hearing (scheduled for 9 a.m.) and the order (file-stamped at 10:27:40 a.m.), the latter makes no mention of the facts set out in the report, as opposed to only the conclusions, and it makes a mere passing reference to other "evidence" of fitness. "[T]he record must affirmatively show the exercise of the court's discretion and judgment." *Gipson*, 2015 IL App (1st) 122451, ¶ 29. The court must manifest that discretion and judgment by setting forth its "factual basis" for finding the defendant fit. *Cook*, 2014 IL App (2d) 130545, ¶ 20. Here, there is no such affirmative showing.

¶ 36    Having determined that the trial court committed error, we now must decide, per the first prong of plain error, whether the error was harmless. Because the denial of due process is a constitutional violation, we must ask whether the error was harmless beyond a reasonable doubt. See *Esang*, 396 Ill. App. 3d at 840. We conclude that it was.

¶ 37    Beyond VanOpstall's report, little in the record sheds light on defendant's fitness for trial. The few transcripts of the hearings held before June 21, 2023, most of them remote hearings, show only that defendant said little and responded cogently and respectfully to the court. At the June 21 hearing, defendant's counsel stipulated to the admission of the report and did not identify any evidence of defendant's unfitness; thereafter, counsel did not challenge the finding of fitness. We must presume that counsel's actions constituted a reasonable strategy (see *People v. Haynes*, 2024 IL 129795, ¶ 23) and reflected the considered belief that the evidence of fitness was not worthy of contestation. Finally, the report itself did not portray the fitness issue as close; VanOpstall noted

that defendant's difficulties in working with his counsel were the result of "volitional" factors, not unfitness, and that defendant did not show signs of distorted thinking during the evaluation but, rather, "presented with logical and coherent thought processes" and understood the charges, penalties, and proceedings in his case. Given the foregoing, we find beyond a reasonable doubt that, had the proceedings comported with due process, the trial court would still have found defendant fit.

¶ 38 We caution that, although we affirm the judgment and the finding of fitness, we cannot condone the precipitate and superficial manner in which the trial court arrived at that finding. We reiterate our admonition in *Cook* that "[t]he court should be active, not passive, in making the fitness determination." *Cook*, 2014 IL App (2d) 130545, ¶ 14.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 41 Affirmed.